UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY KNIGHT,

       Plaintiff,                          Civil Action No. 20-cv-10574
                                                HON. BERNARD A. FRIEDMAN

vs.

RONALD HUGHES in his
Individual and Official Capacities,

       Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.    Introduction

Anthony Knight commenced this 42 U.S.C. § 1983 action against Michigan Department of Corrections Investigator Ronald Hughes. The second amended complaint alleges that Hughes broke Knight's left arm while placing him in handcuffs during his arrest.

Before the Court is Hughes's motion for summary judgment. (ECF No. 43). Knight responded. (ECF No. 44). Hughes filed a reply. (ECF No. 45). The Court will decide the motion without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court denies the motion.

II. Background

    A. *Factual History*

Ronald Hughes is an investigator with MDOC's Absconder Recovery Unit. (ECF No. 44-4, PageID.428, Tr. 11:9-19, Tr. 13:12-13). He is attached to the Michigan State Police's Third District Fugitive Team based out of Flint, Michigan. (*Id.*, PageID.428, Tr. 13:7-9, 24-25; ECF No. 44-2, PageID.422). The Third District Fugitive Team participates in a joint task force with the United States Marshals Service to locate and arrest parole absconders. (ECF No. 44-4, PageID.428, Tr. 12:5-11).

In November 2018, the Third District Fugitive Team received a request from the Marshals Service and the Federal Bureau of Investigations to locate and arrest Anthony Knight. (ECF No. 44-3, PageID.422; ECF No. 44-4, PageID.430-31, Tr. 21:25-22:3). The FBI had previously obtained a warrant for Knight's arrest on charges of human trafficking and conspiracy to distribute narcotics. (ECF No. 44-3, PageID.422). The Marshals Service obtained a separate arrest warrant for Knight after he violated the conditions of his pre-trial release stemming from a weapons offense.[1] (*Id.*).

---

[1] Knight denies that the government charged him with a weapons offense. (ECF No. 43-2, PageID.326, 334, Tr. 47:18, Tr. 55:13-14). The Court's own docket refutes this assertion. *See United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (holding that federal courts "may take notice of proceedings in other courts, both

The Fugitive Team eventually discovered that Knight was staying at a residence in Flint. (*Id.*). On November 7, 2018, Hughes and Michigan State Trooper John Faucette surveilled the location and observed Knight leaving the residence. (*Id.*). Hughes and Trooper Faucette trailed Knight for several blocks in two separate unmarked vehicles. (*Id.*, PageID.423; ECF No. 44-4, PageID.431, Tr. 23:15-24:6). At the intersection of Martin Luther King, Jr. and McClellan Avenues, Trooper Faucette pulled up to Knight with his emergency lights already activated. (ECF No. 44-3, PageID.423). Hughes and another state trooper, Zachary Tebedo, arrived at the scene, converged on Knight's position, and attempted to surround him. (ECF No. 44-4, PageID.431, Tr. 24:3-6; ECF No. 44-5, PageID.445-46, Tr. 9:17-10:13).

---

within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

Knight pled guilty to one count of felon in possession of a firearm before United States District Judge Linda V. Parker on February 28, 2018. (Case No. 17-20216, ECF No. 69). Judge Parker issued a warrant for Knight's arrest on October 10, 2018, after he failed to appear for sentencing. (Case No. 17-20216, ECF No. 87). Knight appeared at a detention hearing before United States Magistrate Judge David R. Grand on November 8, 2018 – the day after his apprehension and the altercation that spurred this litigation. (Case No. 17-20216, ECF Nos. 88-89). Judge Parker later sentenced Knight on the felon-in-possession charge. (Case No. 17-20216, Minute Entry, Feb. 12, 2019). And his amended judgment of conviction reflects the same offense. (Case No. 17-20216, ECF No. 101, PageID.600).

While Knight's denial of the felon-in possession-charge raises questions about his credibility, it is "inappropriate for a court to make credibility determinations when considering a motion for summary judgment." *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 295 (6th Cir. 2009). Those concerns are best left to a jury to resolve. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (noting that credibility determinations "are jury functions, not those of a judge").

Although the parties dispute what happened next, the following facts are uncontested: (1) Hughes ended up tackling Knight to the ground; (2) Knight's hands became pinned underneath his torso; (3) Trooper Tebedo pulled Knight's right arm to the small of his back and handcuffed his right wrist; (4) Hughes pulled Knight's left arm to his back and heard it "pop"; (5) Hughes pulled Knight's left arm with enough force to break it in three different locations; and (6) Knight did not possess any kind of weapon. The record is unclear as to whether Hughes or Trooper Tebedo knew about Knight's weapons offense before they arrested him.

B.    Procedural History

Knight filed this lawsuit against Hughes in his individual and official capacities, alleging claims for excessive force under 42 U.S.C. § 1983 (Count I), gross negligence (Count II), assault and battery (Count III), and excessive force under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Count IV).

Hughes moved to partially dismiss the complaint. (ECF No. 27). In its July 11, 2022 opinion and order, the Court granted the motion in part and denied it in part. (ECF No. 36). The Court (1) dismissed the portion of the section 1983 and *Bivens* claims asserted against Hughes in his official capacity, (2) dismissed the state law gross negligence claim, and (3) retained supplemental jurisdiction over the state law claims for assault and battery. (*Id.*, PageID.239). The parties later stipulated to

4

dismiss the *Bivens* claim altogether. (ECF No. 46). Hughes now moves for summary judgment on the remaining section 1983 excessive force claim (Count I) and the assault and battery claim (Count III).

III. <u>Legal Standards</u>

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV. <u>Analysis</u>

    A. *Fourth Amendment Excessive Use of Force in Violation of 42 U.S.C. § 1983 (Count I)*

Knight contends that Hughes used excessive force while attempting to handcuff him and broke his left arm. (ECF No. 44, PageID.395-97).

The Fourth Amendment guarantees the right to be free from unreasonable seizures. U.S. Const. amend. IV. This encompasses the right to be free from excessive force. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017).

"To determine whether officers' use of force in effecting an arrest is excessive and thus in violation of the Fourth Amendment, a court must determine whether the officers' actions are objectively reasonable in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." *Brown v. Chapman*, 814 F.3d 447, 458 (6th Cir. 2016) (quotation omitted). The inquiry assesses "reasonableness at the moment" the force was used, "as judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quotation omitted). Reasonableness entails balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quotation omitted).

Fourth Amendment reasonableness is a fact-specific inquiry that considers three non-exhaustive factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The focus should be not on "the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 252 (6th Cir. 2010) (cleaned up).

Hughes testified that Trooper Faucette initially pulled up to Knight in an unmarked vehicle with the emergency lights already activated. He exited the vehicle wearing a Michigan State Police vest with a badge, identified himself as a Michigan state trooper, and ordered Knight to show his hands. (ECF No. 44-4, PageID.431, 437, Tr. 24:4-9, Tr. 25:1-12, Tr. 25:25-26:12, Tr. 46:1-8). Knight appeared

"hesitant," he kept his hands in his overcoat pockets, and backed away from the officers. (*Id.*, PageID.431-32, Tr. 24:9-10, Tr. 26:20-27:13). Trooper Faucette ordered Knight to again show his hands "numerous" times. He refused to comply. (*Id.*, PageID.431-32, Tr. 24:10-11, Tr. 26:13-19).

As he backed away from Trooper Faucette, Trooper Tebedo approached Knight from his right side and Hughes from his left. (*Id.*, PageID.432, Tr. 28:3-18). Hughes grabbed Knight by his shoulder blades and pushed him to the ground face first with his arms and hands pinned underneath his torso. (*Id.*, PageID.433, Tr. 31:6-17, Tr. 32:3-11). Both Hughes and Trooper Tebedo attempted to "pull [Knight's] arms out from underneath his body, they were down by his waist, and put them to the small of his back so we could . . . secure him in handcuffs." (*Id.*, PageID.433, Tr. 32:8-11; *see also* PageID.431, Tr. 24:15-21). Still, Knight "actively" resisted the officers' efforts to "pull his arms back behind his back." (*Id.*, PageID.433, Tr. 32:13-15).

Eventually Trooper Tebedo secured Knight's right arm behind his back while Hughes "pulled his left arm out from underneath him and put it to the small" of his back. (*Id.*, PageID.433, Tr. 33:7-11). Although Hughes heard the left arm "pop," Knight did not exhibit any signs of discomfort, pain, or apparent injury. (*Id.*, PageID.434-35, Tr. 37:19-21, Tr. 38:15-20). Nor did Knight mention that his arm

7

felt broken until he reported the injury to Genesee County jail staff at intake.[2] (*Id.*, PageID.434, Tr. 36:12-13, Tr. 37:3-11). Throughout the altercation Knight did not produce a weapon. (*Id.*, PageID.433, Tr. 32:20-22). And the officers never found one. (*Id.*, PageID.434, Tr. 34:14-15).

Trooper Tebedo's recollection tracks this account closely. He testified that Trooper Faucette exited his unmarked vehicle wearing his vest and badge (ECF No. 44-5, PageID.446, Tr. 10:14-19); Knight failed to comply with Trooper Faucette's verbal instructions (*Id.*, PageID.446, Tr. 10:14-11:16); Knight backed away from Trooper Faucette with his hands in in his pockets and refused to remove them (*Id.*, PageID.446-47, Tr. 10:23-25, Tr. 11:9-16, Tr. 15:16-18); Hughes grabbed Knight and threw him to the ground; that Knight fell to the ground with his arms and hands underneath his torso (*Id.*, PageID.446, Tr. 11:20-22); Knight resisted his efforts to bring Knight's right hand behind his back (*Id.*, PageID.446-47, Tr. 11:20-23, Tr. 17:13-20); he pulled Knight's right arm from underneath his body and handcuffed his right wrist (*Id.*, PageID.446, 447, Tr. 11:24-12:4, Tr. 17:15-20); Hughes grabbed Knight's left hand and pulled it from underneath his body quickly (*Id.*, PageID.446,

---

[2] Hughes's deposition testimony conflicts with his factual summary in a November 8, 2018 United States Marshals Service Report of Investigation. (ECF No. 44-3). There, he stated that Knight complained about "a broken arm" immediately after he heard Knight's arm "pop." (*Id.*, PageID.423). Hughes, though, did not recall providing this statement to the Marshals Service. (ECF No. 44-4, PageID.439, Tr. 54:22-55:5).

8

Tr. 12:5-8); he heard Knight's left arm make "some kind of popping sound . . . like something broke" (*Id.*, PageID.446, Tr. 12:8-10); and he then placed the handcuffs on Knight's left wrist and double-locked them. (*Id.*, PageID.450, Tr. 27:14-18). Hughes and Trooper Tebedo nonetheless diverge over one salient point. Tebedo distinctly remembered that Knight had informed Hughes of his broken arm immediately after the officers had placed him in handcuffs. (*Id.*, PageID.446, 448, Tr. 12:12-14, Tr. 19:2-12).

Knight's version of events differs substantially from the officers'. Knight attested that:

- He immediately complied with Trooper Faucette's instructions to place his hands on his head (ECF No. 43-2, PageID.305-06, Tr. 26:18-21, Tr. 27:6-8);

- Hughes tackled him from behind and threw him to the ground face first, although his hands were positioned on top of his head during the entire altercation (*Id.*, PageID.306-08, Tr. 27:20-28:14, Tr. 29:5-16);

- Hughes twisted his left arm behind his back to handcuff him when it popped twice (*Id.*, PageID.307-08, Tr. 28:15-29:2);

- He immediately informed Hughes and Trooper Faucette that Hughes had broken his left arm (*Id.*, PageID.308, Tr. 29:2-3, Tr. 32:6-15);

- The displacement of the bone fragments in his left arm were clearly visible to Hughes and Trooper Faucette (*Id.*, PageID.313, Tr. 34:4-15);

- After complaining about his injuries, Hughes told him to "shut the hell up" (*Id.*, PageID.308, Tr. 29:3);

9

- Trooper Faucette ignored his broken arm and transported him to the Genesee County Jail (*Id.*, PageID.311, Tr. 32:11-15); and

- Genesee County Jail staff refused to accept him into custody because of his injuries (*Id.*, PageID.311, Tr. 32:16-24).

Because Knight's account conflicts with the officers' testimony in several material respects, construing this discrepancy in Knight's favor (as the Court must) a reasonable jury could conclude that Hughes employed an objectively unreasonable amount of force when tackling Knight to the ground and attempting handcuff him.

Nor is Hughes entitled to qualified immunity. Qualified immunity shields law enforcement officers from civil liability where "it would be clear to a reasonable officer" that his use of force "was unlawful in the situation he confronted." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004). Since Hughes acknowledges that Knight possessed a clearly established Fourth Amendment right to be free from excessively forceful handcuffing, qualified immunity does not preclude him from standing trial for violating Knight's constitutional rights. (ECF No. 43, PageID.269). *See Solomon v. Auburn Hills Police Dep't.*, 389 F.3d 167, 175 (6th Cir. 2004) (holding that officer violated clearly established right to be free from excessively forceful handcuffing when he pulled an unarmed, compliant suspect's arm with enough force to fracture it); *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (recognizing that the "right to be free from

10

'excessively forceful handcuffing' is a clearly established right for qualified immunity purposes").

For all these reasons, the Fourth Amendment excessive force claim (Count I) raises genuine factual questions that cannot be resolved on summary judgment.

    B.    *State Law Claims for Assault and Battery (Count III)*

Hughes next argues that Michigan's governmental immunity doctrine bars the assault and battery claims. (ECF No. 43, PageID.272-74).

Under Michigan law, "[a]n assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991). "A battery is the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*

When law enforcement officers are accused of committing intentional torts, such as assault and battery, the burden rests on them to demonstrate whether they qualify for governmental immunity. *Odom v. Wayne County*, 482 Mich. 459, 480 (2008). Officers must show that (1) their actions were undertaken during the course of their employment and that they were acting, or reasonably believed they were acting, within the scope of their authority, (2) the acts were undertaken in good faith,

11

or were not undertaken with malice, and (3) the acts were discretionary, not ministerial. *Id.*

Neither party disputes that Hughes satisfies the first and third elements. (ECF No. 43, PageID.273; ECF No. 44, PageID.402-03). The sole question is whether Hughes acted in good faith or without malice, *i.e.*, the second governmental immunity prong.

Federal qualified immunity and Michigan's governmental immunity are not synonymous.[3] Unlike federal qualified immunity, which assesses conduct using an objective metric, "[t]he good-faith element" under Michigan's governmental immunity analysis "is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a

---

[3] The Sixth Circuit Court of Appeals reached the opposite conclusion in *Grawey v. Drury*, 567 F.3d 302, 316 (6th Cir. 2009), where it adopted the position that "the good faith analysis" for determining governmental immunity "is essentially the same as the Fourth Amendment analysis" for deciding qualified immunity. But the Court of Appeals subsequently retracted this approach in *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011). *See also Marshall v. City of Farmington Hills*, 693 F. App'x 417, 429 (6th Cir. 2017) (holding that "Michigan's subjective standard . . . differs from the objective standard governing qualified immunity under federal law").

While the *Grawey* line-of-thinking occasionally rears its head in the Sixth Circuit's unpublished decisions, these opinions cannot trump *Bletz*'s status as published, binding precedent. *See, e.g., Parsons v. City of Ann Arbor*, No. 22-1338, 2023 U.S. App. LEXIS 11715, at *10 (6th Cir. May 12, 2023) (following *Grawey*); *Briggs v. Miles*, No. 15-1386, 2017 U.S. App. LEXIS 8847, at *14 (6th Cir. Mar. 6, 2017) (same); *see also Keahey v. Marquis*, 978 F.3d 474, 480 (6th Cir. 2020) ("the paper of unpublished decisions cannot escape the scissors of published decisions on point.").

defendant who acts with malicious intent." *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011). This distinction explains why "[t]he proponent of individual immunity must establish that he acted without malice," *Odom*, 482 Mich. at 475, in other words, that he acted "in good faith." *See Miller*, 606 F.3d at 254 (applying Michigan law) ("The only factor at issue here is 'good faith,' which is defined as 'without malice.'").

Viewing the record in his favor once more, the evidence shows that Knight was unarmed; Hughes tackled Knight to the ground even though he complied with Trooper Faucette's instructions to place his hands on his head; Hughes pulled Knight's left arm from underneath his body with enough force to break it in three locations; Hughes told Knight to "shut the hell up" after he complained about his injuries; the injuries to Knight's left arm were physically apparent; and Hughes assisted Trooper Faucette with transporting Knight to the Genesee County Jail without ever suggesting that they first take him to a hospital for medical treatment of his obvious injuries.

Based on these facts, a reasonable jury could draw the legitimate inference that Hughes acted with sufficient malice to defeat any assertion of governmental immunity. *See Dixon v. County of Roscommon*, 479 F. App'x 680, 684 (6th Cir. 2012) (holding that sheriff deputies' statements made during an arrest raised "a genuine issue of fact as to the defendants' good faith"); *see also Parz Grp., Inc. v.*

*City of Livonia*, Nos. 352803 & 352898, 2021 Mich. App. LEXIS 3596, at *12 (Mich. Ct. App. Jun. 10, 2021) (denying summary disposition because defendant's statement to plaintiff "to get with the program" or risk forfeiting a bond "suggested personal animus" and raised a genuine factual dispute as to his good faith).

The portion of Hughes's motion seeking summary judgment on the assault and battery claims (Count III) is, therefore, denied. Accordingly,

IT IS ORDERED that Hughes's motion for summary judgment (ECF No. 43) is denied in its entirety.

IT IS FURTHER ORDERED that the section 1983 excessive force claim (Count I) and the state law claims for assault and battery (Count III) are the only causes of action remaining for trial.

**SO ORDERED.**

Dated: June 5, 2023
  Detroit, Michigan

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Senior United States District Judge